United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BIBEKANAND SATPATHY, dba AMADORE ENTERTAINMENT,

Plaintiff,

v.

CATHAY PACIFIC AIRWAYS, LTD.; COVENANT AVIATION SECURITY, LLC; TRANSPORTATION SECURITY ADMINISTRATION; CITY AND COUNTY OF SAN FRANCISCO; THAI AIRWAYS INTERNATIONAL, LTD. and DOES 1 to 50,

Defendant.

____________________________________/

No. C 04-5334 CW

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Bibekanand Satpathy alleges that certain Defendants damaged his baggage containing unexposed and undeveloped motion picture film by subjecting the film to x-ray surveillance. Defendant Cathay Pacific Airways, Ltd. (Cathay Pacific) moves for summary judgment and, in the alternative, for partial summary judgment on the issues of whether the rights and liabilities of the parties are governed exclusively by the Warsaw Convention, 49 U.S.C. § 40105; whether Plaintiff's claims are barred for failure to give timely notice; and whether Cathay Pacific is entitled to limited liability under the terms of the Warsaw Convention. Defendant Thai Airways International (Thai Airways) joins the

motion.[1] Collectively, Cathay Pacific and Thai Airways are referred as Moving Defendants. Mr. Satpathy opposes the motion.

Having considered all of the papers filed by the parties, the Court grants Moving Defendants' motion for summary judgment that the Warsaw Convention applies to the dispute between these three parties and that Plaintiff failed to file timely notice. Because summary judgment is granted on the ground of untimely notice, the Court does not address the issue of limited liability.

BACKGROUND

1. Evidentiary Objections

Cathay Pacific objects to some of the evidence submitted by Plaintiff. The Court has reviewed these evidentiary objections and has not relied on any inadmissible evidence. To the extent that the Court relies on any evidence to which Cathay Pacific objects, such evidence has been found admissible and the objections are overruled. To the extent that the Court decides the motion without considering evidence to which Cathay Pacific has objected, its objections are overruled as moot.

2. Factual Background

Mr. Satpathy is the principal of Amadore Entertainment, a film production company. According to Mr. Satpathy, he was contracted to film a motion picture in India. The film was part of a media project and was scheduled to be telecast by the Indian government

---

[1]On February 10, 2005, Plaintiff voluntarily dismissed his claims against Defendant Transportation Security Administration and on March 25, 2005, Plaintiff voluntarily dismissed his claims against Defendant City and County of San Francisco. Defendant Covenant Aviation Security, Inc. has not joined in this motion for summary judgment.

United States District Court
For the Northern District of California

and distributed in national and international markets. Mr. Satpathy attests that the value of this contract was $12,000,000.00. In preparation for his business venture, Mr. Satpathy purchased a round-trip ticket from Udaan Travel and was issued a "Passenger Ticket and Baggage Check." The reverse side of the ticket provided notice of the limits of liability under the Warsaw Convention. A notice of the limits of liability was also listed in a ticket jacket which contained the Passenger Ticket and Baggage Check.

On November 1, 2003, Mr. Satpathy checked in at the San Francisco International Airport (SFO) with eighteen bags weighing seventy pounds each which, according to Mr. Satpathy, contained unexposed and undeveloped motion picture film and camera accessories. The combined weight was 1,260 pounds. Mr. Satpathy knew that sixteen bags were in excess of the two-bag limit. Cathay Pacific issued Mr. Satpathy an excess baggage ticket showing that he was being charged at a rate of $121.00 per bag in excess, for a total of $1,936.00. Mr. Satpathy also received eighteen bag tags for each bag that he checked.

According to Mr. Satpathy, large, bright yellow and orange tags with large bold black letters were placed on all eighteen bags indicating "DO NOT X-RAY," and "PACKAGE CONTAINS UNDEVELOPED FILM." Mr. Satpathy declares that he informed a Cathay Pacific counter representative that the baggage contained film that was not to be x-rayed. Mr. Satpathy states that the counter representative and an unidentified supervisor assured him that the bags would not be x-rayed. Mr. Satpathy also declares that he reminded the

United States District Court
For the Northern District of California

representative that on a previous trip in July, 2003, his baggage containing undeveloped film was taken to another counter for manual inspection. Mr. Satpathy claims he suggested to the representative that if such a procedure were again necessary, he was carrying a film changing tent, which is a portable darkroom.

Mr. Satpathy asserts that he gave the counter representative a written declaration stating the nature of the checked baggage and an estimate of the value of the film at $73,000.00. Cathay Pacific denies that this is possible, claiming that certain procedures are followed when a passenger declares value for his or her baggage. Specifically, a Cathay Pacific manager would have to approve any declared value, which is limited to $3,000 per passenger regardless of the number of bags. If approved, the manager would note the bag tag numbers in the passenger's file, place a "fragile" sticker on the bags and call down to the baggage room to advise of the declaration. In addition, according to Cathay Pacific, Mr. Satpathy would have been charged a supplemental sum and issued a miscellaneous charges order (MCO). The MCO would state the declared value, the contents of the baggage and the supplemental sum. The MCO would also be placed in Mr. Satpathy's flight file. According to Cathay Pacific Airport Service Manager J. Russ Forston who reviewed Mr. Satpathy's flight file, there was no evidence of any declared value or supplemental sum. Forston Dec. ¶ 9.

On November 1, 2003, Mr. Satpathy traveled on Cathay Pacific from San Francisco to Bangkok with a stop in Hong Kong. Then, he traveled from Bangkok to Kolkata, India on Thai Airways, arriving on November 4, 2003. At that time, Mr. Satpathy received all

United States District Court
For the Northern District of California

eighteen bags but was not aware of any damage to the film. He proceeded with his movie-shooting schedule. Mr. Satpathy declares that when the first round of filming was completed, he and the motion picture crew took the film to be developed in a motion picture film processing laboratory where he learned that the film was ruined as a result of x-ray damage. Mr. Satpathy returned to the United States in December, 2003, and he declares that he then sought a second opinion on the damaged film. Mr. Satpathy asserts that RGB laboratory in Southern California confirmed the damage to the film in late December, 2003. Thereafter, Mr. Satpathy retained counsel, who provided written notice of the damaged film to Cathay Pacific and Thai Airways on January 5, 2004.

On August 23, 2004, Mr. Satpathy filed suit in State court alleging the following State law causes of action: (1) negligence; (2) breach of contract; and (3) fraud/negligent misrepresentation. On December 16, 2004, Thai Airways removed the complaint to this Court.

LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987). Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. The substantive law will identify

United States District Court
For the Northern District of California

which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the burden of showing that there is no material factual dispute. Therefore, the court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289. The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of showing that no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325. The moving party is not required to produce evidence showing the absence of a material fact on such issues, nor must the moving party support its motion with evidence negating the non-moving party's claim. Id.; see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 885 (1990); Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991), cert. denied, 502 U.S. 994 (1991). If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the opposing party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." Bhan, 929 F.2d at 1409. A complete failure of proof concerning an essential element of the non-moving

United States District Court
For the Northern District of California

party's case necessarily renders all other facts immaterial. Celotex, 477 U.S. at 323.

DISCUSSION

I. Applicability of the Warsaw Convention

Moving Defendants assert that all rights and liabilities of the parties to this action are governed exclusively by the Warsaw Convention for the Unification of Certain Rules Relating to International Transportation by Air[2] (Warsaw Convention). Although Plaintiff does not concede that the Warsaw Convention applies to his claims against Moving Defendants, he fails to argue that it does not.

The Warsaw Convention prescribes uniform rules governing the international air transportation of passengers, baggage and cargo. Trans World Airlines, Inc. v. Franklin Mint Corp., 466 U.S. 243, 247 (1984). The United States ratified the Warsaw Convention in 1934. Id. at 246. The treaty was amended by the Montreal Protocol 4, which became effective in the United States in 1999. Perri v. Delta Air Lines, Inc., 104 F. Supp. 2d 164, 168 (E.D.N.Y. 2000). The purpose of the Warsaw Convention is "to create a uniform body of law governing the rights and responsibilities of passengers and air carriers in international air transportation. It was intended to protect the 'international air transportation industry[, which] was in its beginning stages' at the time the Convention was drafted." Dazo v. Globe Airport Sec. Servs., 295 F.3d 934, 937

[2] October 12, 1934, 49 Stat. 3000, T.S. No. 876 (1934) reprinted in note following 49 U.S.C. § 40105.

United States District Court
For the Northern District of California

(9th Cir. 2001). As a treaty of the United States, the Warsaw Convention supersedes State law, even when the State claim is not cognizable under the Warsaw Convention. U.S. Const. Art. VI, cl. 2; El Al Israel Airlines, Ltd. v. Tseng, 525 U.S. 155, 175-76 (1999).

The Warsaw Convention applies to "all international transportation" defined in part as:

> any transportation in which, according to the contract made by the parties, the place of departure and the place of destination, whether or not there be a break in the carriage or a transshipment, are situated either within the territories of two High Contracting Parties or within the territory of a single High Contracting Party . . .

Warsaw Convention, ch. 1, art. 1, (2).

Here, Mr. Satpathy traveled from San Francisco to Hong Kong, Bangkok and Kolkata, India. The places of departure and destination were situated within the territories of High Contracting Parties, namely, the United States and India, respectively. Thus, Mr. Satpathy's travel constituted international transportation as defined by the Warsaw Convention. Therefore, the Warsaw Convention governs the rights and liabilities of Mr. Satpathy, Cathay Pacific Airways and Thai International Airways. Consequently, the Warsaw Convention preempts Mr. Satpathy's State law claims against Cathay Pacific and Thai International. See Tseng, 525 U.S. at 162, 169-75; Carey v. United Airlines, 255 F.3d 1044, 1048, 1051 (9th Cir. 2001).

II. Timely Notice Under the Warsaw Convention

Cathay Pacific argues that Mr. Satpathy's claims are barred for failure to give timely written notice as required by the Warsaw

Convention. Mr. Satpathy responds that, given the inconspicuous nature of the damage to the film, he acted reasonably upon discovery of the damage and thus satisfied the notice requirements. The Warsaw Convention provides, in pertinent part:

> 2. In case of damage, the person entitled to delivery must complain to the carrier forthwith after the discovery of the damage, and, at the latest, within seven days from the date of receipt in the case of baggage. . .
>
> 3. Every complaint must be made in writing upon the document of carriage or by separate notice in writing dispatched within the times aforesaid.
>
> 4. Failing complaint within the times aforesaid, no action shall lie against the carrier, save in the case of fraud on his part.

Warsaw Convention, ch. 3, art. 26, (2)-(4).

These requirements serve "to facilitate prompt notice of carriers' exposure to liability from damage claims . . . sparing potential defendants of the burden of having to defend themselves against 'stale' claims brought long after the wrong alleged." Hitachi Data Sys. v. United Parcel Serv., 76 F.3d 276, 279 (9th Cir. 1996); see United States v. Kubrick, 444 U.S. 111, 117 (1979).

It is undisputed that Mr. Satpathy received his baggage on November 4, 2003, and first provided written notice to Moving Defendants on January 5, 2004. Moving Defendants contend that this fact is sufficient to bar Mr. Satpathy's claim for failure to provide timely notice given the express terms of the Warsaw Convention. Furthermore, citing Flying Tiger Line, Inc. v. United States, 170 F. Supp. 422, 426 (Ct. Cl. 1959), Moving Defendants

argue that, because the Warsaw Convention is an international agreement, "an American court does not have the right to interpret it as freely as it might interpret an American statute or contract." Plaintiff cites no authority for his argument that, considering the inconspicuous nature of the damage to the film, enforcing the seven-day notice provision "would be a gross distortion of the intent of the Warsaw Convention." Opp. at 5. Plaintiff argues that he acted reasonably under the circumstances because, upon verification of the damage, he satisfied the notice requirement.

On the other hand, Moving Defendants present no authority for the proposition that the seven-day notice requirement may not be enlarged when the damage cannot be discovered within that time period. In Stud v. Trans International Airlines, 727 F.2d 880, 883 (9th Cir. 1984), the Ninth Circuit acknowledged that there is an argument that the notice period could be enlarged under such circumstances, but did not have to decide the question because the shipper in that case knew of the destruction within the required time-frame. However, Stud is applicable nevertheless. In Stud, the plaintiff transported a horse which was in good health upon arrival at the destination airport. Id. at 881. Shortly thereafter, the horse became visibly ill and died ten days later. An autopsy done the next day concluded that the horse died of pneumonia brought on by the stress of travel. Id. A final autopsy

United States District Court
For the Northern District of California

dated more than two months later concluded that the temperature fluctuations in the aircraft probably caused the horse's fatal illness. Id. The plaintiff provided written notice of its claim four days after the final autopsy. Id. The plaintiff argued that notice was timely because he did not know that he could hold the defendant airline liable until he received the final autopsy report. Id. at 883. The Ninth Circuit stated:

> Stud's notice of complaint was not timely. Even if we assume for the sake of argument that the fourteen-day period may be enlarged when damage to or destruction of goods could not, in the exercise of due diligence, be discovered within that period, it should not be enlarged here. Within fourteen days of receipt, a diligent shipper would have known-and Stud in fact knew-of both the damage to and the destruction of Super Clint. The Convention did not require Stud to prove to a certainty at the time of giving notice that Transamerica had caused Super Clint's death. There was no need to wait for a final autopsy report before giving notice of complaint.

Id.[3]

Likewise, Mr. Satpathy knew of the damage to his film immediately after he used it for the first round of filming in India and developed it in a motion picture film processing laboratory where he found the film completely ruined by x-ray damage. However, Mr. Satpathy provides no evidence that he gave written notice to Moving Defendants within seven days of discovering the damage. Rather, he waited until he returned to the

[3] In Stud, the plaintiff had fourteen days, under an earlier version of the Warsaw Convention, to give notice because "goods" had been damaged. Where, as here, there is alleged damage to baggage, a claimant has seven days to provide written notice under the terms of the Warsaw Convention as amended by the Montreal Protocol No. 4.

United States, obtained a second opinion on the cause of the damage to the film, and hired counsel who then provided notice. Id. at ¶¶ 14, 15. Stud instructs that Mr. Satpathy should have provided notice to Moving Defendants within seven days of his discovery of the damage to the film because the Convention does not require a claimant to prove to a certainty, at the time of giving notice, that the airline had caused the damage.

Accordingly, even assuming that the Warsaw Convention could be construed to allow the enlargement of the notice period when damage to or destruction of goods could not, in the exercise of due diligence, be discovered within that period, it should not be enlarged here because Mr. Satpathy should have given notice of the damage to his film immediately after the film was developed in India when he first discovered the damage, not weeks later after he returned to the United States, obtained another examination and hired counsel. Therefore, Moving Defendants' motion for summary judgment is granted.

CONCLUSION

For the forgoing reasons, Defendant's motion for summary judgment is GRANTED.

IT IS SO ORDERED.

Dated: 9/19/05

CLAUDIA WILKEN
United States District Judge